# Supreme Court of Texas

No. 22-0311

David W. Howell,

*Petitioner*,

v.

Greg Abbott, in his Official Capacity as Governor of
the State of Texas,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE BLACKLOCK, joined by JUSTICE DEVINE, concurring in the denial of the petition for review.

I concur in the denial of the petition, which challenges gubernatorial emergency orders no longer in effect. This case is moot because the relief Mr. Howell sought—removal of allegedly unlawful coronavirus measures such as gathering restrictions, business closures, and mask mandates—has already been achieved. It was achieved through the political process by a decision of the Governor, not through the judicial process by a decision of judges, but it was achieved nonetheless. Indeed, it may be that constitutional arguments like those

Howell urges played a role in the Governor's decision to withdraw the restrictions. As I have previously observed, constitutional objections to the government's extraordinary response to the virus require careful consideration by all branches of government, not just by the courts. *In re Salon a la Mode*, 629 S.W.3d 860, 860 (Tex. 2020) (Blacklock, J., concurring).

When challenged government action has ceased and no credible threat of its reinstatement exists, courts lack jurisdiction to determine its legality because doing so remedies no concrete injury. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). Under that rule, this case is moot.[1]

Although this petition should be denied, the court of appeals' misapplication of the law of standing should not go without comment. The court of appeals held that Howell lacked standing to challenge pandemic emergency orders because Howell's "interest in the [matter] is not distinct from that of the general public." *Howell v. Abbott*, No. 04-21-00119-CV, 2022 WL 947190, at *3 (Tex. App.—San Antonio March 30, 2022). Of course, the oft-cited rule on which the court of appeals

---

[1] Howell concedes that his claims for injunctive relief were mooted by the withdrawal of the challenged orders, but he argues that his pursuit of nominal damages saves this case from mootness. He relies on the U.S. Supreme Court's recent decision to that effect in *Uzuegbunam v. Preczewski*. 141 S. Ct. 792, 801–02 (2021). We are not obligated to follow the U.S. Supreme Court's decisions when determining the jurisdiction of Texas courts under our state constitution. *Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992). This Court has never held that a claim for nominal damages forestalls the mootness of a challenge to rescinded government action. This *pro se* appeal, which the State contends is beyond the Court's jurisdiction for additional reasons other than mootness or standing, does not present a suitable opportunity to consider the effect of a nominal-damages claim on mootness under Texas law.

relied—that plaintiffs challenging government action must show injury "distinct from that of the general public"—contains an unspoken assumption. It assumes that government action operates on distinct classes of people, not directly on every person all at once. In most cases, this assumption is valid. Typically, a government action will directly affect only a discrete subset of the public, and only those directly affected have a concrete, particularized stake in a judicial determination of the action's legality. By contrast, citizens against whom the government's action does not directly operate—citizens with only a "generalized" interest in seeing the laws followed—lack the concrete injury required to challenge the action in court. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 17–18 (Tex. 2011).

What happens, however, when the assumptions underlying these traditional rules of standing no longer hold? Specifically, what happens when the government's action operates not against categories of people but directly against everyone at the same time? It should come as no surprise that many common formulations of the law of standing do not account for government action so all-encompassing that nearly everyone is personally and concretely injured by it and therefore has standing to challenge it.

Throughout our country, the government's response to the coronavirus shattered traditional assumptions about the limited scope of government action. Governments commandeered the personal, private decisions of daily life for every citizen in a way many of us would not have imagined possible before it suddenly happened. Texas was no exception, although the duration and severity of the impositions were

3

more limited here than in many other places. Surely the usual requirement that a plaintiff show injury "distinct from that of the general public" cannot be applied mechanically when its foundational assumptions about the limited nature of government action are no longer valid.

As the court of appeals acknowledged, the orders Mr. Howell challenges "meaningfully changed Texans' day-to-day activities." *Howell*, 2022 WL 947190, at *1. Nobody denies that Howell, like nearly all Texans, saw his daily life altered dramatically by the challenged orders. A person whose "day-to-day activities" have been "meaningfully changed" by a government order quite obviously has standing to challenge the order. Imagine if such an order operated only against a particular class of persons. No colorable argument could be made that those in the targeted class lack standing to challenge the order. In this case, the targeted class included nearly everyone. But the court of appeals held—and the State now contends—that when a government order operates directly against everybody, then *nobody* has standing to challenge it. The opposite is true. When a government order operates directly against everyone at the same time, then *everyone* has standing to challenge it. That the existing judicial precedent rarely accounts for such a circumstance further illuminates the striking peculiarity of the year 2020 in the history of American law.

The court of appeals further faulted Howell for failing to "explain[] how he suffered a concrete injury not suffered by the public at large." *Id.* at *2. This statement takes two valid concepts and combines them into an invalid rule. It is true that plaintiffs must show "concrete

injury." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008). It is likewise true that an injury is not concrete if it is merely a "generalized grievance" shared by the public at large. *Andrade*, 345 S.W.3d at 17–18. It is not true that a plaintiff must both show a concrete injury and distinguish his injury from that suffered by others. Concrete injury is the requirement. Asking whether a plaintiff alleges only a "generalized grievance" is just one way of asking whether there is concrete injury at all. When a plaintiff like Howell has alleged a personal, concrete injury, there is no need to *also* ask whether the injury is shared by the public at large. If everybody has suffered the same concrete injury, then nobody has suffered a mere generalized grievance.[2]

With these observations noted, I respectfully concur in the denial of the petition for review.

James D. Blacklock
Justice

**OPINION FILED:** December 9, 2022

---

[2] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016) ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance."); *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("[W]here a harm is concrete, though widely shared, the Court has found injury in fact.") (internal quotation marks omitted); *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 697 (Tex. 2021) ("Data Foundry has suffered an injury peculiar to itself, in that it alleges the rates it must pay to Austin Energy are discriminatory and otherwise illegal. In the context of lawsuits filed by ratepayers to challenge utility rates charged by a municipality, we have not required an individual plaintiff to allege its injury is distinct from injuries other ratepayers may suffer.").